BAETZ v. SCHOENLAU–KUKKUCK TRUNK TOP & VENEER CO. et al.†

(Circuit Court of Appeals, Eighth Circuit.  May 27, 1912.)

No. 3,634.

PATENTS (§ 328*)—ANTICIPATION—FEED MECHANISM FOR DRYING APPARATUS.

The Baetz patent, No. 835,843, for a feed mechanism for drying apparatus for drying veneer, lumber, etc., is void for anticipation in the prior art.

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by Henry Baetz against the Schoenlau-Kukkuck Trunk Top & Veneer Company and Frederick Kukkuck. Decree for defendants, and complainant appeals. Affirmed.

Emil Starek, for appellant.

Charles Howson (Howson & Howson and F. R. Cornwall, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. This action was brought by complainant for the alleged infringement of letters patent No. 835,-843, granted to complainant of date November 13, 1906, for an improvement in feed mechanism for drying apparatus. The bill prayed for the usual relief by injunction, damages, and accounting. Issues were joined, and a decree entered, dismissing the complainant's bill for want of equity. Complainant has appealed. Two questions are presented by the issues:

(1) Is complainant's patent void for want of novelty?

(2) Is defendants' machine an infringement of complainant's?

While in plaintiff's patent six claims are presented, the fourth and fifth relate chiefly to a hot air chamber, and were abandoned by the complainant upon the argument.

In determining the validity of complainant's patent, it becomes first necessary to determine what was covered by the claims upon which the action is based. The claims are as follows:

"1. A feed mechanism comprising a pair of juxtaposed conveyers, and having transverse rib formations between which the articles may be confined, substantially as set forth.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied October 18, 1912.

"2. A feed mechanism comprising a pair of juxtaposed endless conveyers having a series of transverse ribs or bars spaced suitable distances apart, the material treated being inserted between the adjacent laps of the conveyers and held between the aforesaid transverse formations, substantially as set forth.

"3. A feed mechanism comprising a pair of juxtaposed endless conveyers having a series of transverse rib or bar formations curved in cross-section, whereby the articles inserted between the adjacent laps are held in position substantially along lines of contact, substantially as set forth."

"6. A feed mechanism comprising a pair of endless conveyers in juxtaposed relation, and having transversely-disposed rods or slats on their adjacent laps between which the articles are gripped, and held against warping, substantially as set forth."

The invention is described in the specification substantially as follows: The present invention may be installed in any dryer wherein veneer, lumber, or sheets of any description whatsoever are treated, the object of the invention being to so confine the pieces in their passage through the drying air current that, while they are free to shrink, the tendency to warp is reduced to a minimum, and in the majority of cases disappears altogether. This insures a substantially uniform product, the shape of the dried piece conforming substantially to what it was before the drying operation, and hence minimizing the waste incidental to such operations. The feed mechanism herein, though eminently adapted for the feeding of lumber, is applicable to any material which has a tendency to behave similarly under the same circumstances.

In passing through the heating compartment, around each chamber or header is an endless conveyer, the adjacent laps of the conveyers traveling jointly in the space between the chambers, and forming a feed mechanism for the lumber to be dried. The lumber is fed to this feed mechanism through the open front of the casing. Each conveyer is of the roller-link variety, the rollers of the upper lap of the lower conveyer traveling in a track or channel, disposed above the header; the lower lap of the chain being allowed to sag. The chains of each conveyer are connected by a series of transverse bars or strips, substantially semicircular in cross-section; the curved portions being presented outwardly. These are spaced about three or four inches apart, making collectively a conveyer-belt whose supporting surface is composed of a series of transverse ribs, bars, or slats. As the lumber pieces are fed between the adjacent laps of these belts, the pieces are gripped and held between the opposing members of each pair of slats, and, since the surfaces of the latter are rounded, they contact with the lumber, substantially along single lines or very reduced surfaces, thus permitting the exposure of a maximum surface of the lumber to the hot-air currents traversing the space between the headers and permitting the hot air to freely circulate around the material treated. Each piece of lumber or veneer being thus confined between a series of slats or bars is prevented from bending or warping during the drying process, and hence, when finally removed from the dryer, the piece has undergone little or no change in shape, save the small per cent. in shrinkage incident to all drying operations.

We thus find that the characteristics of complainant's feed mechanism, specified in the claims above quoted, are a pair of juxtaposed conveyers, which carry the material to be dried between them, confining and holding the material; that these conveyers have transversely extended ribs or slats for holding and confining the articles conveyed therein for the purpose of drying. These conveyers are endless, and the outer surface of the transverse ribs or slats are curved in cross-sections, so that the area of contact between them and the articles to be fed is limited. The articles are so gripped between the conveyers that they are held against warping, and the gripping is not to be so strong as to prevent shrinkage. It is apparent from the description of the mechanism that the pieces are gripped between the upper lap of the lower conveyer, which is kept rigidly horizontal by reason of the track in which it runs, and the weight caused by the sag of the lower lap of the upper conveyer. The sag, it is apparent, must be adjusted according to the thickness of the material sought to be dried, for, if the sag in the lower lap of the upper conveyer should rest too heavily upon the material, it would prevent shrinkage without splitting. No means is pointed out for changing the weight of the sag of the lower lap of the upper conveyer to correspond with the difference in thickness of material fed into it. This is left to be supplied, which an ordinary mechanic would, doubtless, do by shortening or lengthening the conveyer so as to reduce or increase the amount of slack that should be necessary for the drying material.

It is claimed on behalf of defendant that complainant's patent is void, every essential element having been anticipated in prior patents and in a dryer known as "Miller's Dryer," which was manufactured and used some years prior to complainant's invention. Numerous prior patents were introduced in evidence, but an analysis of two or three of them will be sufficient for the disposition of the case.

Patent No. 354,798, dated December 21, 1886, to John H. Lorimer, was an improvement in drying processes. In his specifications he described his invention, substantially, as an improved process for treating textile fabrics or materials, such as wool, cotton, rags, paper pulp, etc., by causing them to pass back and forth through a chamber by means of endless aprons, through which material hot air currents were caused to pass. Two endless aprons between which the wool or cotton to be dried is held and conveyed through the dryer or hot air chamber may be formed of link chains, with slats between, or webbing, netting, or a combination of any two or more of these may be used; the particular construction of these endless conveyers or aprons being immaterial to my invention. These aprons lie close upon each other in passing through the heating or drying chamber; the material being fed in one end between the endless aprons.

In letters patent No. 445,226, dated January 27, 1891, to John H. Lorimer, for a drying machine, he described his apparatus as a closed chamber through which endless aprons or perforated or slatted work are caused to pass, and preferably guided back and forth within the compartments, and brought to the outside, so that the

materials may be laid upon the slatted work or apron at a point outside of the closed chamber, and then be conveyed through the closed chamber, and when dried passed out of the same again for delivery. These aprons are preferably formed of two sprocket chains, between which are metallic slats, so as to form a good support for the material, and at the same time permit the free passage of air or gases through it. It is quite evident that the aprons might be made of wire and cords, and, in fact, might be made in any suitable manner, so as to form open work, though I prefer to form them as first described.

In these Lorimer patents, we have endless aprons or conveyers, whose juxtaposed co-operating runs confine, hold, and carry the material to be dried through the dryer or hot air chamber. The aprons or conveyers may be formed with link chains with slats between or webbing, netting, or a combination of any two or more of them. As shown in the Lorimer drawings, these slatted conveyers extend crosswise.

There was introduced in evidence a model of what is designated as the "Miller dryer." Though not patented, it was constructed for Henry W. Miller, of Philadelphia, and was operated by Henry W. Miller & Sons from 1889 until the end of 1894, after which it was operated by H. W. Johns Manufacturing Company until about 1901. This dryer was chiefly used for drying sheets of hair or sheets of asbestos, although the evidence shows that it has been successfully demonstrated as practical for drying veneer. The Miller dryer consisted of a drying chamber with carrying aprons or conveyers of link belting or chain belting with ribs across. The material to be dried was carried between two conveyers placed in juxtaposed position; the upper run of the conveyers being supported on tracks, the lower run sagging down. The material to be dried was placed on the upper run of the lower conveyer and was held in place by the sag of the lower run of the upper conveyer, the lower run of the upper conveyer traveling in the same direction as the upper run of the lower conveyer. These conveyers consisted of a pair of chains and transverse ribs or slats, extending transversely and connecting the two chains; each transverse rib or slat being curved so as to present a curved face to the material conveyed. Thus the area of contact was minimized, the weight of the lower run of the upper conveyer resting upon the material, holding and gripping it against warping, if the tendency of the material while drying was to warp. This dryer had all of the essential elements embraced within the claims of complainant's patent, which are involved in this controversy.

We are clearly of the opinion that every essential element of the claims of complainant's patent was anticipated in the prior art, and that such patent is void for lack of novelty.

The evidence established the fact that defendants' machine contains all the elements of complainant's patent, except that defendants' machine is so constructed that the sprocket wheels, carrying the conveyers, are so adjusted that the space between the lower lap of the upper conveyer and the upper lap of the lower conveyer may be in-

creased or diminished as may be required by the thickness of the material to be dried. Whether this difference in construction avoids infringement we need not decide, as we hold complainant's patent to be void for lack of novelty; and the decree of the circuit court is affirmed.

SANBORN, Circuit Judge (dissenting). The evidence fails to convince me that the Miller dryer was conceived and brought into practical use before the invention secured by the patent in suit and the inventions described in the other patents that are claimed to anticipate relate to a different art and would not have been effectual to accomplish the purpose of the patent in suit. For these reasons, I am unable to concur in the opinion and decree of the court.